(For headnote, see Mullen v. Canal Co., ante, 496.)
This case is practically identical in its essential features with that of Mullen v. Canal Co., ante, 496, wherein the legal principles applicable to such cases are fully discussed. In fact, it is against the same defendant, and arises out of the same general work, the deepening and widening of the canal in 1898 and 1899. It is in evidence that the "sweat and lead ditch," the obstruction of which caused much of the injury, had been in continuous use for both purposes for more than fifty years. One of the witnesses, Hughes, testified as follows: "That he has known the land for fifty years, and it has been cultivated for the past fifty years; that the plaintiff's land lies about 1,200 yards along the canal; that the defendant in widening its canal dug out mud, sand and water and threw it over the land of the plaintiffs, filled up the sweat ditch, which is also a lead ditch on the farm, and threw mud, sand and water back on the land 60 feet, and that it ruined the land back to the second ditch, which was 250 to 300 yards back from the canal. That the mud and sand was piled upon the lands and on the bank of the canal from 6 to 8 feet high. That it injured 40 acres of land one-half its value. That the land along the canal was worth $50 per acre. That he had sold part of the same land for $100 per lot — 75 x 150 feet. That because of the bank thrown up and washing the sand and mud on the land, it is now worth but very little or nothing, and can not be sold for lots. That part of the tract of land is in the village of South Mills. The house and lot, which is a portion (743) of the farm occupied by G. W. Norris, is in South Mills. That the sweat ditch is also one of the lead ditches on the farm, and the top ditches run into this ditch, and have been for over fifty years, ever since he has known the farm. That it is necessary to have this sweat ditch to take off the water percolating the canal bank and the *Page 509 
water falling upon the bank and running from it. That when he first knew the canal and the land, the sweat ditch was there. That it is necessary to have the sweat ditch to prevent the water from the canal, which is held in it by embankments on each side, from flowing over on the land of the plaintiffs, and all the more so because now the water is held 18 or 20 inches higher than before, and unless there is a ditch to catch this water it falls over on the land of the plaintiffs. That he cut a ditch over on the land of the plaintiffs 60 feet from the lead and sweat ditch filled by the defendant, but it will not carry off the water, and will not stand because of the sand piled up by the defendant company, and whenever there is a hard rain it washes the sand in this ditch and fills it up. That the house and lot where Norris lives was damaged from $300 to $400. The shade trees, shrubbery and all vegetation on it were destroyed by the company throwing sand, mud and water on the house and lot. It was piled up in front of the house 6 or 8 feet, and thrown into the porch, and the sand, mud and water ran into the front door. That it was thrown under the house and around it, and over the lot. That the mud and sand was under the house up to the sills, and would run into the house and over the porch to such an extent that the porch was torn down, and they had to dig a trench around the house to keep the water from running into it when it rained. That the damage to the crop was as much as two barrels of corn to the acre, and corn was worth $2 per barrel."
Defendant introduced no testimony, and requested the court (744) to charge the jury as follows:
1. That the defendant had a right to fill up its sweat ditch along the line of the canal, and the filling of this ditch by the defendant did no wrong to the plaintiffs. The jury will assess no damages on that account.
2. That the plaintiffs had no right to cut ditches through their land into the sweat ditch of the defendant, and the defendant, by stopping the drainage of these ditches into its sweat ditch, did no wrong to the plaintiffs, and the jury shall give no damages on that account.
These instructions were properly refused by the court, and there is no error in that part of the charge set out in the record of which the defendant can complain. In the face of such uncontradicted evidence and the resulting verdict of the jury, we can not concur in the contentions of the defendant upon any principle of law known to us. The judgment of the court below is
Affirmed.
Cited: Pinnix v. Canal Co., 132 N.C. 125; Bullock v. Canal Co., ibid., 180; Dale v. R. R., ibid., 708. *Page 510 
(745)