This is an action by Gladys Bond and husband, N. A. Bond, and N.E. Hicks and husband H. Z. Hicks, against Carolina, Clinchfield, and Ohio Railway, to recover damages of the defendant for the burning over of plaintiff's land, and the destruction of timber alleged to have been caused by the negligence of the defendant. The cases were consolidated and tried together at the October Term, 1917, of Rutherford Superior Court, as the same fire burned over the lands of the plaintiffs in each case. The plaintiffs filed similar complaints touching the origin of the fire, and the cause of same, and the allegation of the plaintiffs was "That on the 15th day of April, 1916, the defendant ran its trains and engines over its track and along the lands of plaintiffs in a negligent manner, and negligently permitted sparks to be emitted from said engine, which sparks were allowed to fall upon the lands of plaintiffs adjacent to the defendant's right of way, and on said right of way, and to set fire to the combustible materials thereon," and the plaintiff's further alleged "that the defendant had permitted and allowed inflammable material to be and remain on its right of way at the point where the railroad passes over and along plaintiffs' lands, which said inflammable materials were set on fire by sparks falling from one of defendant's engines passing over its right of way, or otherwise, on the 15th day of April, 1916."
There was a further allegation as to the damages to plaintiffs' land by burning over a large number of acres for the plaintiffs in each case, and the destruction of growing timber, wood and other property, and the impoverishing of the plaintiffs' lands. *Page 646 
The defendant denied the allegations of its negligence, and alleged that the fire originated elsewhere, and that it was in no wise (608) responsible for the origination or spread of the fire or the burning of the timber on the lands of the plaintiffs.
Upon the trial of the cause, the plaintiffs offered evidence to sustain the allegations contained in the complaint, several witnesses testifying that one of defendant's trains passed over the track at the point where the lands of plaintiffs were situated, and that immediately prior to the passing of the train there was no fire in that vicinity, and that in a few minutes after the train passed the right of way, which had grown up in broom-sedge, and at this season of the year was old and dry, and in an inflammable condition, was seen to be burning. Witnesses also testified that the engine of the train passed by the witnesses who were situated close to the railroad track as it approached the lands of the plaintiffs, and was emitting live coals and sparks, and that some of these fell on the witnesses, and burning the clothing, and they further testified that following the passage of the train they noticed smoke arising on the right of way of the railroad track at the point adjacent to plaintiffs' lands, and upon investigation found that the fire originated within twelve feet of the railroad track and had burned off the right of way and on to plaintiffs' lands, and it was further in evidence that the railroad right of way at this point was 100 feet on each side of the track. Witnesses further testified that the sparks emitted from the engine were large live coals and sufficiently large and hot to ignite the inflammable material on the right of way, or elsewhere that they might fall.
The evidence of the defendant was to the effect that the fire originated one-fourth of a mile from the railroad — possibly from a blockade distillery — and was seen at that point several hours previous to the passage of its train, and the defendant offered evidence tending to show that the fire did not reach its right of way until several hours after the passage of its train, and that it spread to its right of way from the lands adjacent thereto.
The defendant admitted the title of plaintiffs to the lands in controversy, which had been denied in the answer.
The defendant offered no evidence as to the condition of its engine, and no evidence as to its spark arrester being in good condition, and no evidence as to the manner of the operation of its train on the day in question.
The judge charged the jury as follows:
"The burden is on the plaintiffs, gentlemen of the jury, to prove by the greater weight of the evidence that their lands were burned over by *Page 647 
fire which escaped from the defendant's engine, or train, and if they fail in that respect that would be the end of the case, and it would be your duty to answer the first issue `No.'
"(a) But the burden is on the plaintiffs further to satisfy you (609) — even if you find that the fire did burn over plaintiffs' land thrown from the defendant's engine, or train — by the greater weight of the evidence, that that was the result of the negligence of the defendant in failing to do a duty which the law requires of it. One of those duties which the law requires is that it shall keep its right of way clear from rubbish and inflammable matter, and if it fails to do so and by reason of the condition of the right of way fire from the train ignites on the right of way, it would be attributable to the negligence of the defendant and the defendant would be answerable for any damage which might result. The defendant is required to keep a proper spark arrester so as not to allow live coals and red-hot cinders to escape from the engine which are calculated to set the woods on fire, and if the fire got out from a defective engine in that respect, it would be negligence on the part of the defendant" (b)
To so much of the foregoing charge as it included between (a) and (b) the plaintiffs excepted.
"Have the plaintiffs satisfied you from the evidence, by the greater weight of the evidence, that the fire originated and came from the defendant's engine or train?
(c) "And if so, have they satisfied you from the evidence, by the greater weight of the evidence, that it caught from the right of way, and the right of way was foul? If so, it would be your duty to answer the first issue `Yes.' But if they have failed to do so, it would be your duty to answer it `No.' (d)
To so much of the foregoing charge as is included between (c) and (d) the plaintiffs excepted.
(e) "If you shall find from the evidence, by the greater weight of the evidence, that the fire was caused by reason of a defective spark arrester one which allowed sparks to escape from the engine sufficiently lighted or heated to set fire wherever they would strike; if you should find that it was dry and the sparks from the engine lit on the land of the defendant, or on the right of way, and spread from that over the plaintiffs' land, and you find from the greater weight of the evidence, it would be your duty to answer the first issue `Yes.' If you fail to so find as to either, it would be your duty to answer it `No.'" (f)
To so much of the foregoing charge as is included between (e) and (f) the plaintiffs excepted.
"It is contended by the plaintiffs that there was no fire along the railroad a few minutes before the train passed; they argue that smoke *Page 648 
was seen to rise directly after the train passed and that the passenger train going along was emitting sparks which burned when they struck anything, and that fire was discovered to be along the right of (610) way and burning from the railroad into the woods. That is the contention upon the part of plaintiffs, and the plaintiffs urge in their contentions that you should so find that the right of way was foul, and that these sparks falling upon the right of way and inflammable matter, broomsedge, spread out over the lands.
"The defendant contends that you could not so find from the evidence. The defendant contends that it was shown you from evidence which it asks you to believe that fire was seen to be burning and smoke rising some quarter of a mile from the railroad early in the day, between 8 and 9 o'clock, and that that continued to spread out over the woods and in the direction where this fire was, and that parties passing along there as late as 3 and 4 o'clock saw no fire on the right of way, and that the fire was 240 feet from the right of way. The defendant insists that it has produced evidence, which it asks you to believe, that there was a blockade still running in that neighborhood not a great distance from the railroad right of way the day before and that fire broke out at 8 or 9 o'clock in the morning, and the defendant insists that you ought to find from the evidence that that was the fire which burned over the lands, and not the other.
"You are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. If you shall find from the greater weight of the evidence that this land of the plaintiffs — it is admitted it was the same fire — was burned over by the negligence of the defendant, it would be your duty to answer the first issue `Yes,' then fix the damages. But if you fail to so find, it would be your duty to answer it `No.' If you answer the first issue `Yes,' you will then find the damages."
The jury returned the following verdict:
1. Were lands of the plaintiffs burned over by the negligence of the defendant as alleged in the complaint? Answer: "No."
Judgment was rendered in favor of the defendant upon the verdict and the plaintiff appealed.
We have set out the allegations of negligence, the evidence offered to support these allegations, and the charge of the Court, for the purpose of showing that the real controversy between the *Page 649 
plaintiffs and the defendant was as to the origin of the fire, the plaintiffs contending that sparks fell from the engine of the defendant on combustible matter of its right of way and was thence communicated to the lands of the plaintiffs, and the defendant contending (611) that the fire came from an illicit distillery operated off the right of way of the defendant by parties unknown.
There is no allegation of a defective engine or spark arrester, and no suggestion of negligent operation except in the third paragraph of the complaint where it is alleged that the defendant ran its trains in a "negligent manner," without specifying in what the negligence consisted, and this is followed in the same paragraph by the allegation that the negligence was in permitting sparks to fall on combustible matter.
And when we turn to the evidence for the defendant it is directed solely to the origin of the fire.
There is no evidence tending to prove that there was no combustible matter on the right of way of defendant, and nothing to exculpate the defendant if the fire came from its engine.
We are, therefore, constrained to hold that the only question in controversy on the first issue was whether the fire which burned over the lands of the plaintiffs came from the engine of the defendant or from the illicit distillery, and when so considered, the charge, if otherwise objectionable in failing to give the plaintiffs the benefit of the presumption arising from proof of the origin of the fire, as in Currie v.R. R., 156 N.C. 423, is unobjectionable, as the jury has found the fact against the plaintiffs.
Again, there being no allegation of a defective engine, the burden was on the plaintiffs, as his Honor charged, to establish the negligence relied on, the accumulation of combustible matter on the right of way. Moore v. R.R., 124 N.C. 338; McMullan v. R. R., 126 N.C. 725.
The charge as to the spark arrester was without evidence to support it, the evidence being that the fire started on the right of way, if it originated from the engine of the defendant, but of this the plaintiff cannot complain, as it gave them the benefit of having the jury consider in their favor a phase of negligence without allegation or proof, which might impose a liability on the defendant.
No error.
Cited: Nichols v. Trust Company, 231 N.C. 160. *Page 650