15520

SIMONTON *ET AL.* v. EDMUNDS *ET AL.*

(25 S. E. (2d), 284)

December, 1942.

*Messrs. Price & Poag,* of Greenville, S. C., Counsel for Appellants,

*Mr. W. K. Charles,* of Greenwood, S. C., Counsel for Respondents,

March 31, 1943.

CIRCUIT JUDGE WILLIAM H. GRIMBALL, ACTING ASSOCIATE JUSTICE, delivered the unanimous opinion of the Court:

This appeal raises the sole question of what, according to the rule followed in the State of South Carolina, is the degree of kinship between a deceased intestate and the children of her first cousin—sometimes designated as "her first cousins once removed."

The record shows that in 1941, Mrs. Eugenia R. Juhan departed this life intestate, her only living kin at the time of her death being a number of cousins.

It has been judicially determined that certain of these cousins, respondents herein, are related to the deceased intestate in the fourth degree. From this there is no appeal.

In the case, however, of H. D. Caldwell, Vivian R. Caldwell and Wilton Caldwell Russell, the Circuit Judge, Hon. A. L. Gaston, issued his decree affirming the report of the Master in equity of Greenville County and holding that they, being children of a predeceased first cousin, were related to Mrs. Juhan in the fifth degree, and were therefore not entitled to share with the respondents in the division of Mrs. Juhan's estate. From this holding of the Circuit Court they prosecute this appeal, insisting that they are related to the deceased intestate in the fourth degree.

It is our opinion that the position taken by appellants is untenable. It is contrary to the rule of calculation which has apparently always been followed in this State.

The applicable statute is contained in Section 8906 of the 1942 Code, and is as follows: "In reckoning the degrees of kindred, the computation shall begin with the intestate and be continued up to the common ancestor, and then down to the person claiming kindred inclusively, each step inclusively being reckoned as a degree."

In discussing this provision of the statute of distributions, this Court, in *Ex parte Kreps,* 61 S. C., 9, 39 S. E., 181, 182, quoted with approval the following from American and English Encyclopedia of Law: "In England and in the United States states statutes of distributions modeled upon the 118th novel of Justinian have been enacted, which defines with precision the order of preferences among kindred. In construing these statutes the courts have generally applied the rule of the civil law in ascertaining the proximity of the kindred. In determining lineal consanguinity, each step up or down from the decedent counts as one degree. Thus an intestate or his son or father are related in the first degree, and intestate and his grandson or grandfather are related in the second degree. In determining collateral consanguinity, the rule is to count up from the intestate to the common ancestor, and then down to the person whose kindred with the intestate is sought to be ascertained. In this computation each step, both in the ascending and the descending line, counts as one degree. Thus an intestate and his brother are related in the second degree, and an intestate and his cousin in the fourth degree." "This," stated this Court, "is the rule in South Carolina."

Chancellor Kent in his Commentaries, Volume II, 422, wrote to the same effect: "The next of kin is determined by the rule of the civil law; and under that rule the father stands in the first degree, the grandfather and grandson in the second; and in the collateral line, the computation is from the intestate up to the common ancestor of the intestate and the person whose relationship is sought after, and then down to that person. According to that rule, the intestate and his brother are related in the second degree, the intestate and his uncle in the third degree."

Applying this rule of computation to the instant case, we find from the record that one Bill Reid was the common ancestor, being the grandfather of Mrs. Juhan, the intestate, and the great-grandfather of appellants.

His son, D. W. Reid, was intestate's father; and his daughter, Elizabeth Reid Caldwell, was the mother of J. C. Caldwell, who in turn was the father of the appellants.

The computation then is as follows:

1. The intestate was related to her father, D. W. Reid, in the first degree.

2. To her grandfather, Bill Reid, in the second degree.

3. To her aunt, Elizabeth Reid Caldwell, in the third degree.

4. To her first cousin, J. C. Caldwell, in the fourth degree.

5. To her "first cousins once removed," the appellants herein, in the fifth degree.

This computation follows the rule long established in this State. Any other method of computing degrees of kinship would be contary to the terms of this rule.

Appellants insist that their aunt, Elizabeth Reid Caldwell, was just as much a "common ancestor" of the intestate as was her grandfather, Bill Reid; for the reason that if D. W. Reid's estate was being settled and his wife and children were deceased, his heirs would be his father, Bill Reid, and his sister, Elizabeth Reid Caldwell, share and share alike; and if it was the estate of Mrs. Caldwell being settled, under similar circumstances, her heirs would be her father, Bill Reid, and her brother, D. W. Reid, the father of Mrs. Juhan, the deceased intestate.

This contention of appellants is untenable.

It follows that the decree appealed from must be affirmed.

Mr. Chief Justice Bonham and Messrs. Associate Justices Baker, Fishburne, and Stukes, concur.